# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION
#### 2:10cv9

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | ) | |
| EX REL.; JOHN WILLIAM BISHOP; | ) | |
| and DONNA J. BISHOP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| COUNTY OF MACON; MACON | ) | |
| COUNTY SHERIFF'S DEPARTMENT; | ) | |
| ROBERT L. HOLLAND, Individually | ) | |
| and in his Official Capacity as Sheriff | ) | |
| of Macon County; C.J. LAU, | ) | |
| Individually and in his Official Capacity | ) | |
| as Deputy Sheriff of Macon County; | ) | |
| GARY GARNER; W. T. POTTS; | ) | |
| MARSH USA, INC.; and THE OHIO | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendants Macon County's, Macon County Sheriff's Department's, Robert L. Holland's, Charles J. Lau's, and Ohio Insurance Company's (hereinafter the "county defendants") Motion to Dismiss (#9). Having carefully considered the county defendants' Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

# FINDINGS AND CONCLUSIONS

## I.    Background

In this action, plaintiffs, a mother and son, contend that their arrests for possession of stolen goods and seizure of items from their home pursuant to search warrants were unconstitutional and bring claims under 42, United States Code, Section 1983, and they have also asserted supplemental state law claims.

Drawn from the Amended Complaint, plaintiffs contend that John Bishop was a roommate of defendant Gary Garner, who was in turn friends with John Bishop's employer W. T. Potts, who ran a  real estate management firm. AC, at ¶¶ 15-16.  They became roommates in September 2006.  Id., at ¶ 15.  From late 2006 to early 2007, multiple larcenies were reported by owners of vacation homes managed by W. T. Potts. Id., at ¶ 17.

On March 1, 2007, John Bishop moved out of Defendant Garner's home, and into the home of his mother, Donna Bishop.  Id., at ¶ 18. Several days later, on March 4, 2007, Defendant Garner filed a complaint with defendant Macon County Sheriff's Department, in which plaintiffs contend Defendant Garner falsely alleged that John Bishop stole cash from him, and that John Bishop was in possession of stolen goods. Id., at ¶¶ 19-20. As a result of Defendant Garner's accusations, Defendant Lau executed three search warrants at Donna Bishop's home, seizing numerous items of

personal property, which plaintiffs contend were not identified in the applications for the search warrants. Id., at ¶ 21.

According to plaintiffs, Defendant Lau advised Donna Bishop that she could have some of the items back if she produced proof of ownership, id., at ¶ 22, but instead turned over the seized property to Defendant Potts shortly after the seizure from plaintiffs. Id., at ¶ 23. They contend that the purported victims never positively identified the items of personal property seized from plaintiffs. Plaintiffs further contend that, rather than returning all the items to the larceny victims, Defendant Potts returned a few items to the owners, and kept the remainder of the property for himself. Id., at ¶ 25.

In addition to alleging improper disbursal of seized items in violation of North Carolina law, id., at ¶ 23, plaintiffs contend that Defendant Lau caused Donna Bishop to be arrested on charges of possession of stolen property "for which no 'corpus delicti' had been preserved." Id., at ¶ 27. Plaintiffs contend that Defendant Lau failed to inform prosecutors in a timely manner that he had disposed of evidence, that he failed properly investigate leads that would have exonerated Donna Bishop, and that he also did not inform the State of North Carolina that he had failed to preserve this evidence. Id., at ¶¶ 26-27.

Plaintiffs contend that as a result of Defendant Lau's alleged misconduct, the

plaintiffs were both charged with possession of stolen goods, id., at ¶ 28, and that

> the criminal charges against D. Bishop were dismissed on November 4, 2008, based upon insufficient evidence, in return for guilty pleas by J. Bishop, entered, in part, to protect his mother.

Id., at ¶ 28.[1]

Finally, plaintiffs contend that they have demanded the return of seized property, and they make further demand in their factual allegations for return of such seized property.[2] Id., at ¶ 29.

## II.    Causes of Action Asserted

For causes of action, plaintiffs have asserted the following claims for relief under federal and state law, as indicated:

(1)    **First Claim for Relief.** A Section 1983 claim for violations of the fourth and fourteenth amendments to the United States Constitution, asserted against Defendant Holland and Defendant Lau;[3]

---

[1]    While the transcript of such proceedings is not now before this court (and such is not necessary for deciding the instant motion) the undersigned notes the incongruity of paragraph 28 inasmuch as an allegation that charges were dismissed "based upon insufficient evidence" is not consistent with an allegation in the same sentence that the charges were dismissed "in return for guilty pleas by J. Bishop . . . ." Id.

[2]    While it is proper to allege that they earlier made a demand, the court believes that any *further* "demand" should be placed in the *ad damnum* portion of a complaint as it is not a "fact" but a request for affirmative relief.

[3]    Both Defendant Holland (the Sheriff of Macon County) and Defendant Lau (a deputy of Sheriff Holland) are sued in both their individual and official capacities. See Amended Complaint, at ¶¶ 8-10 and the caption of the Amended Complaint.

**(2)  Second Claim for Relief.**  A Section 1983 claim , that does not specify the federal statutory law or constitutional right violated, but in which plaintiffs contend that defendants Macon County and the Macon County Sheriff's Department "developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional Rights of persons living in or visiting the County, which caused a violation of Plaintiffs' rights," id., at ¶ 37;

**(3)  Third Claim for Relief.**   A state common law claim for negligence asserted against "defendants," id., at ¶ 42, in which plaintiffs contend that defendants owed a duty to properly investigate, train, and supervise law enforcement officers, and to execute warrants in a reasonable manner and preserve property seized and that they breached that duty;[4]

**(4)  Fourth Claim for Relief.**  A state common law claim for false arrest against the "Officers" who allegedly restrained plaintiffs against their will;[5]

---

[4]     The court finds such Third Claim for Relief to have no relevance to Defendants Garner or Potts as they are alleged to be civilian members of the public; thus, plaintiffs have mistakenly used the term "defendants" in such cause of action.

[5]     Again, the use of the term "Officers" is troublesome as it fails to identify which of these defendants supposedly arrested plaintiffs falsely.  While both Defendants Holland and Lau are alleged to be law enforcement officers, there is no allegation in the Complaint that either of these defendants arrested plaintiffs; rather, the only allegation is found at paragraph 27, in which plaintiffs allege "[t]hat Lau . . . caused D. Bishop to be arrested on charges of possession

(5)     **Fifth Claim for Relief.**  A state law claim for malicious prosecution and abuse of process, asserted against "Garner and the Officers . . . ," id., at ¶ 55[6];

(6)     **Sixth Claim for Relief.**  A state law claim for conversion asserted against Defendants Potts and Lau;

(7)     **Seventh Claim for Relief.**  A state law claim for bailment asserted against Macon County and Defendants Holland and Lau, in which plaintiffs contend that such defendants, under a theory of bailment, owed a duty of care to plaintiffs to maintain the safety and security of items seized pursuant to the search warrants; and

(8)     **Eighth Claim for Relief.**  A state law claim for punitive damages asserted against "[t]he Department, Officers, Garner and Potts . . . ," id., at ¶ 68.

## III.     The County Defendants' Partial Motion to Dismiss

The county defendants have moved for partial dismissal of the Amended Complaint, contending that plaintiffs have, as to certain claims, failed to state cognizable claims against them under Rule 12(b)(6), Federal Rules of Civil Procedure.

---

of stolen property . . . ."  Id., at ¶ 27(emphasis added).  There are no factual allegations as to who, if anyone, arrested John Bishop.

[6]     The court reasserts its concern with the use of the term "officers."

In response, plaintiffs contend that

> Rule 12(b) (6) motions are strongly disfavored by the Courts. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hall v. Sutton*, 755 F.2d 786, 788 (11th Cir.1985).

Response, at p. 1. Plaintiffs have misapprehended current case law as the "no set of facts" standard is no longer applicable.

## IV.    Rule 12(b)(6): Applicable Standard

Until relatively recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle them to relief. <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989);  <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court held that  the "no set of facts" standard first espoused in <u>Conley</u>, <u>supra</u>, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."   <u>Id.</u>, at 563.   The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later

establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, plaintiffs must now plead sufficient facts to state a claim for relief that is *plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S., at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id.

(citing <u>Twombly</u>, <u>supra</u>; emphasis added).  What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Id.</u> This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

Thus, a complaint falls short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's liability . . . ." <u>Id.</u>  While the court accepts <u>plausible</u> factual allegations made in a complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP</u>, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Amended Complaint herein, the court has accepted as true all of the well pled factual allegations contained in the Complaint, and, as well, will identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, <u>supra</u>, at 1950. <u>See</u> Amended Complaint, at ¶¶ 37-40.   As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> (alteration

added).

**V.     Discussion**

    **A.     Motion to Dismiss First Claim for Relief Asserted Against Defendants Holland and Lau.**

        **1.     Official Capacity Claims Against Defendants Holland and Lau**

Based on the caption of the Amended Complaint, Defendants Holland and Lau are sued in both their official and individual capacities.

In the First Claim for Relief, plaintiffs assert a Section 1983 claim against Defendants Holland and Lau in their official capacities for violations of the fourth and fourteenth amendments to the United States Constitution. Plaintiffs allege that these defendants violated their rights to be free from unreasonable search and seizure, but fail to identify in such claim any municipal policy or custom that caused their injuries.

This lack of allegations concerning the existence of a policy or custom is critical to the survival of an official capacity claim, as an official capacity claim is in fact a claim against the municipality. <u>Board of Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479-81 (1986). Local governing bodies, such as counties, municipal corporations, and school boards (and municipal officials sued in their official capacities), are "persons" that can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief when the alleged unconstitutional action executes governmental policy or

custom. <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978).

Two elements are required to properly plead and later establish municipal liability: (1) whether plaintiffs' harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. A municipality is responsible only when through execution of a government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts injury. <u>Monell</u>, 436 U.S., at 694; <u>Spell v. McDaniel</u>, 824 F.2d 1380 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988). To avoid imposing vicarious municipal liability rejected by <u>Monell</u>, any theory of municipal liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom, (2) fairly attributing the policy and fault for its creation to the municipality, and (3) finding a necessary affirmative link between identified policy or custom and specific violation. <u>Spell</u>, 824 F.2d, at 1389.

In this case, plaintiffs have made absolutely no allegations that any injury sustained based on the alleged fourth and fourteenth amendment violations where caused by the execution of a government's policy or custom. Thus, plaintiffs fail to allege official capacity claims against these defendants in their First Claim for Relief. Where the alleged constitutional deprivation is not an official act of the municipality, the only recovery lies against the officer in his individual capacity. <u>Hughes v.</u>

Blankenship, 672 F.2d 403, 405-06 (4th Cir. 1982); Burt v. Abel, 585 F.2d 613, 617 n.9 (4th Cir. 1978).  The undersigned will recommend that plaintiffs' claims against Defendants Holland and Lau in their official capacity in the First Claim for Relief be dismissed.[7]

## 2.    Individual Capacity Claim Against Defendant Holland

Missing from the First Claim for Relief, and the factual allegations that precede and are incorporated therein, is any allegation that Defendant Holland, the Sheriff of Macon County and Defendant Lau's ultimate supervisor, had any personal involvement in the search warrants and the events that purportedly transpired surrounding their execution.  A claim for deprivation of a constitutional right by a state actor cannot be maintained absent an allegation that such state actor was personally connected with the constitutional infringement. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977).   A close reading of the Amended Complaint reveals no allegation of any involvement of Defendant Holland in Defendant Lau's securing of the search warrant, its execution, or the manner in which he allegedly disposed of seized property.

---

[7]     The county defendants have also requested that the official capacity claim against Defendant Lau be dismissed because it would be "redundant" in the event the official capacity claim asserted against Defendant Holland survived.  The undersigned has declined to take up this motion, which appears to have been made in the alternative, as it is clear that plaintiffs have failed to allege that the alleged fourth and fourteenth amendment violations were pursuant to any policy or custom.

Absent allegations of personal involvement by Defendant Holland, the court concludes that plaintiffs are attempting to bring the claim against Defendant Holland in his individual capacity based on a theory of supervisory liability, or *respondeat superior*. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. <u>Monell</u>, 436 U.S., at 694; <u>Ross v. Reed</u>, 719 F.2d 689, 698-99 (4th Cir. 1983). A claim can be stated where plaintiffs alleges that the employee's conduct, directly causing the alleged deprivation, is undertaken to effectuate the official policy or custom for which the official is responsible. <u>Fisher v. Washington Metro. Area Transit Auth.</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Further, a supervisor can be liable for acts of subordinates if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Plaintiffs must allege that Defendant Holland had actual or constructive knowledge that Defendant Lau was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiffs, that Defendant Holland's response was inadequate, and that there was a causal link between his inaction and the injury to plaintiffs. <u>Id.</u>, at 372-73. Plaintiff have failed to make any such allegations of a pervasive, unreasonable risk of harm or any knowledge of Defendant Holland. The undersigned will, therefore, recommend

that the First Claim for Relief asserted against Defendant Holland in his personal capacity also be dismissed under Rule 12(b)(6).

**B.    Motion to Dismiss Second Claim for Relief Asserted Against Macon County and the Macon County Sheriff's Department.**

**1.    Macon County**

In the Second Claim for Relief, plaintiffs contend that defendants Macon County and the Macon County Sheriff's Department "developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional Rights of persons living in or visiting the County, which caused a violation of Plaintiffs' rights." Id., at ¶ 37. The county cannot be held liable for any alleged constitutional transgressions of the Sheriff or his deputies:

> In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county. *See* N.C.Gen.Stat. § 162-1 (2000). The sheriff, not the county, has final policymaking authority over the personnel decisions in his office. *Clark v. Burke County*, 117 N.C.App. 85, 89, 450 S.E.2d 747, 749 (1994) ("any injury resulting from [the deputy sheriff's] actions in this case cannot result in liability for Burke County and summary judgment is therefore affirmed for Burke County"). N.C.Gen.Stat. § 153A-103 provides that each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." This authority may not be delegated to another person or entity. N.C.Gen.Stat. § 162-24 (2000).
> Thus, it is Sheriff Sellers, not Anson County, who has the final decision making authority over law enforcement policies of his office. Indeed, Anson County does not have the power to exercise supervision or control over the law enforcement officers who work for the sheriff

who "are appointed by and act for the sheriff, who alone is responsible for their conduct." *Styers v. Forsyth County*, 212 N.C. 558, 561, 194 S.E. 305, 309 (1937). Accord *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C.App. 447, 449, 368 S.E.2d 892, 894 (1988).

In short, Anson County has no authority to control law enforcement policies of the Anson County Sheriff's Office or to control its personnel.

Little v. Smith, 114 F.Supp.2d 437, 446 (W.D.N.C. 2000).

Whether a county has policymaking control over the sheriff or his deputies is the key to determining whether a county can be sued under 42, United States Code, Section 1983, for alleged Section 1983 violations by a sheriff or his deputies. For example, in Monell, supra, the Court held that local governing bodies, such as counties, are "persons" that can be sued directly under Section1983 for monetary, declaratory, or injunctive relief when the alleged unconstitutional action executes a county policy or custom. Put another way, while a county is considered to be a person under Section 1983, it can only be sued where the county is responsible, through issuance of policies, for the conduct of another person who violated some federally protected right. In determining whether a county can be held responsible, a court must ask whether a county has the ability to make policy for the sheriff's office, and whether it was the execution of such a policy that inflicted injury on the plaintiff. Id., at 694. As discussed above, North Carolina law prohibits counties from setting policies for their respective sheriffs.

While in their Second Claim for Relief plaintiffs cast a broad net with conclusory allegations that the county created unspecified policies and procedures, the only facts alleged concern acts allegedly committed by a deputy and, to a lesser extent, acts of the Macon County Sheriff himself. To be held to answer in this case, the county must have set the un-enumerated policies which resulted in the sheriff and his deputies violating plaintiffs' rights. As discussed earlier, all North Carolina sheriffs set the policies for the conduct of their department, not the county. Little, supra. Without doubt, North Carolina has unequivocally provided that each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." N.C.Gen.Stat. § 153A-103. In North Carolina, the buck stops with the sheriff under Section 1983 for his own acts and those of his deputies that are made pursuant to the sheriff's own policies and customs. Little, supra. The undersigned will recommend that the Second Claim for Relief asserted against Macon County be dismissed.

## 2. Macon County Sheriff's Department

The county defendants next request dismissal of the Second Claim for Relief insofar as it has been asserted against defendant Macon County Sheriff's Department, which the county defendants contend is not a legal entity capable of being sued.

The district court in Hughes v. Bedsole, 913 F.Supp. 420, 426 (E.D.N.C.1994), held that the "Cumberland County Sheriff's Department" is not a legal entity under

Section 1983 capable of being sued. Id. The reported federal case law in North Carolina is consistent with Hughes. See Parker v. Bladen County, 583 F.Supp.2d 736, 740 (E.D.N.C. 2008); Efird v. Riley, 342 F.Supp.2d 413, 419-20 (M.D.N.C. 2004). See also Moore v. City of Asheville, 290 F.Supp.2d 664, 673 (W.D.N.C.2003), aff'd, 396 F.3d 385 (4th Cir.2005) (dismissing claims against city police department for lack of capacity).

Directly addressing the ability of sheriff's departments to sue and be sued, the logic of Honorable James C. Dever III, United States District Judge, in Parker, supra, is compelling:

> Defendants also seek to dismiss the claims against the Bladen County Sheriff's Department, and plaintiff does not appear to contest dismissal as to this defendant. "State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." *Efird v. Riley*, 342 F.Supp.2d 413, 419-20 (M.D.N.C.2004) (*citing Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir.1981)). For example, N.C. Gen.Stat. § 153A-11 acknowledges that a county is a legal entity which may be sued. However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department. Accordingly, the Bladen County Sheriff's Department lacks legal capacity to be sued. *See Efird*, 342 F.Supp.2d at 420 (dismissing claims against county sheriff's department for lack of capacity); *see also Moore v. City of Asheville*, 290 F.Supp.2d 664, 673 (W.D.N.C. 2003), *aff'd*, 396 F.3d 385 (4th Cir.2005) (dismissing claims against city police department for lack of capacity). Defendants' motion to dismiss all claims against the Bladen County Sheriff's Department is granted

Parker, supra, at 740. The considerations used by the court in Parker to conclude that sheriff departments are not legal entities are nearly identical to the considerations that

this court employed to find that a city police department was not a legal entity. In Moore, supra, Honorable Lacy H. Thornburg, United States District Judge (now retired), concluded that the City of Asheville Police Department was not an entity capable of being sued under North Carolina law.

The undersigned believes that the overwhelming case law originating in its sister federal courts in North Carolina is correct and that North Carolina sheriff's departments are not legal entities under North Carolina law capable of being sued. The undersigned will respectfully recommend that plaintiff's Second Claim for Relief asserted against defendant Macon County Sheriff's Department be dismissed as such defendant is not an entity capable of being sued. See also Jackson v. Bulloch County Jail, 2008 WL 2437421 (S.D.Ga. 2008); Lane v. El Paso County Sheriff, 2007 WL 2221155, 1 (D.Colo. 2007)(The sheriff's department is not a separate entity from El Paso County and, therefore, is not a person under 42 U.S.C. § 1983); Lovelace v. DeKalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir.2005)(county police department not a legal entity subject to suit under § 1983); Miller v. Benton County Jail, 2006 WL 2711482, at *1 (W.D.Ark. Sept.11, 2006) (county jail not a legal entity subject to suit); Lesikar v. Med. Staff, 2002 WL 441404, at *4 (N.D.Tex. Mar.19, 2002) (§ 1983 plaintiff may not sue detention center or sheriff's department, which lack a distinct legal existence); Agnew v. St. Joseph County Jail, 1996 WL 534928, at *1 (N.D.Ind.

Aug.14, 1996); <u>Powell v. Cook County Jail</u>, 814 F.Supp. 757, 758 (N.D.Ill.1993) (jail not a person or legal entity).

**C.     Motion to Dismiss Individual Capacity Claims Against Defendant Holland Contained in the Third, Fourth, Fifth and Seventh Claims for Relief**

### 1.     Individual Capacity Claims Generally

The distinction between a defendant sued in his or her official capacity and sued in his or her individual capacity under Section 1983 is discussed by the Supreme Court in <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).   The <u>Graham</u> Court explained, as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon, supra*, 469 U.S., at 471-472, 105 S.Ct., at 878. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

<u>Id.</u>, at 165-166 (footnote omitted).  The Court went on to explain that

[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

Id., at 166 (citations omitted).

## 2. Third Claim for Relief

In the plaintiffs' Third Claim for Relief, they assert a state common law claim for negligence. Amended Complaint, at ¶ 42. Plaintiffs contend that defendants owed a duty to properly investigate, train, and supervise law enforcement officers, and to execute warrants in a reasonable manner and preserve property seized and that they breached that duty. Id. While the Amended Complaint contains allegations of what could fairly be described as negligent conduct by Deputy Lau in both the conduct of his investigation and the purported manner in which he handled seized evidence,[8] there are no allegations that Defendant Holland even had a hand in the investigation and there are no factual allegations as to how the sheriff failed in his training or supervision of Defendant Lau.

The undersigned believes that such broad pleading without supporting factual

---

[8]     While negligence cannot form the basis of a Section 1983 for deprivation of due process, Daniels v. Williams, 474 U.S. 327 (1986), the court considers the claim of negligence to be pled in the alternative.

allegations is precisely the type of iniquity with which the Court was concerned in Iqbal, supra. In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citing Twombly, supra; emphasis added). It is simply not enough to allege that a sheriff had a duty to train and failed to train; rather, plaintiffs are obliged to allege the facts that inform such legal conclusions. Did the sheriff waive BLET training for this deputy? Was the sheriff aware of an ongoing problem with this deputy which he failed to address? Absent such specific allegations in the charging instrument, the claim becomes a moving target, affording the charged defendant with little ability to defend himself. Plaintiff's argument under Conley, supra, is no longer applicable as the court can no longer conjure up "any set of facts" to save plaintiffs' claim. Applying Iqbal in the context of a personal capacity suit under Graham, plaintiffs have failed to allege sufficient facts upon which a finder of fact could find that the official, acting under color of state law, caused the deprivation of a federal right. The undersigned will, therefore, recommend that the Third Claim for Relief, asserted against Defendant Holland in his personal capacity, be dismissed in accordance with Rule 12(b)(6).

### 3. Fourth, Fifth, Sixth, and Seventh Claims for Relief.

In the Fourth Claim for Relief, plaintiffs assert a state common law claim for false arrest. In the Fifth Claim for Relief, plaintiffs assert a state law claim for malicious prosecution and abuse of process. In the Sixth Claim for Relief, plaintiffs assert a state law claim for conversion. In the Seventh Claim for Relief, plaintiffs assert a state law claim for bailment. These claims also suffer from the same deficiency that plaintiffs' third cause of action suffers, namely, plaintiffs fail to allege any facts that Defendant Holland in participated in or directed Defendant Lau in his own alleged misconduct in the underlying criminal proceeding. Thus, these claims fail against Defendant Holland, sued in his individual capacity, under <u>Iqbal</u> and <u>Graham</u>. The undersigned will recommend that these claims be dismissed against Defendant Holland sued in his individual capacity.

### D. Public Official Immunity

The county defendants next move for dismissal of the state common law third and seventh claims for relief asserted against Defendants Holland and Lau in their individual capacities based on public official immunity under North Carolina law. In the plaintiffs' Third Claim for Relief, they assert a state common law claim for negligence. In the Seventh Claim for Relief, plaintiffs assert a state law claim for bailment.

Generally, "government officers and employees may be held personally liable for their torts." Gunter v. Anders, 114 N.C.App. 61, 66 (1994). When a government employee is sued in his individual capacity, however, North Carolina courts have distinguished between whether the worker is a public official or a public employee when assessing liability.

> It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious…or that he acted outside of and beyond the scope of his duties.

Id., at 67-68 (emphasis deleted). Put another way, public officials sued in their individual capacities enjoy public official immunity from simple negligence and other tort suits. Smith v. Heffner, 235 N.C. 1, 7 (1952). The only exception is where a plaintiff alleges that the public official acted corruptly or with malice. Id. See also Slade v. Vernon, 110 N.C. App. 422, 428 (1993).

Plaintiffs contend that these defendants are not entitled to the protection of public official immunity. Response, at p. 6. They have alleged that their conduct amounted to "gross negligence." Amended Complaint, at ¶ 47. This is, however, a legal conclusion, which as the Court instructed in Iqbal is not to be considered under Rule 12(b)(6). Instead, this court has reviewed the Amended Complaint for factual

allegation which could plausible support a finding that these public officials acted corruptly or with malice. The most severe factual allegations against these public officials is that Defendant Lau improperly returned seized items to a person he believed would return them to their real owners. Such alleged errors in judgment, without factual alleging indicative of an improper motivation or unlawful recompense, is simply insufficient under current North Carolina case law to preclude these public officials from the protections of public official immunity. The undersigned will recommend that the third and seventh causes of action asserted against Defendants Holland and Lau in their individual capacities be dismissed as they enjoy public official immunity from such claims.[9]

### E. Motion to Dismiss the Abuse of Process Claim Contained in the Fifth Claim for Relief

In their Fifth Claim for Relief, plaintiffs assert a state law claim for malicious prosecution and abuse of process. The county defendants move for dismissal of the "abuse of process" aspects of this claim as asserted against Defendants Holland an Lau. In response, plaintiffs argue that these defendants abused process by using the search warrant and arrest warrant to seize property, advise Donna Bishop that she needed to provide proof of ownership, to charge plaintiffs with crimes, and to induce

---

[9] Such recommendation is made in the alternative as to Defendant Holland, sued in his individual capacity, inasmuch as he is also entitled to dismissal on other grounds as previously discussed.

John Bishop to plead guilty. While plaintiffs' argument is supported by factual allegations in the Amended Complaint, they miss the mark inasmuch as there are no allegations that could support a claim that Defendants Holland and Lau *abused* process. The complained-of-acts are all within the normal and customary uses of search and arrest warrants.

> The essential elements of abuse of process are: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceeding. *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227-28 (1955). " '[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ.' " *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979)(*quoting Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)).

Beroth Oil Co. v. Whiteheart, 173 N.C.App. 89, 99-100 (2005). In this case, what plaintiffs have not alleged are facts which could show an "ulterior purpose." At most, the facts alleged could, if found by a finder of fact to be true, prove that Defendant Lau botched an investigation through mishandling of what could otherwise have been compelling evidence. There are no facts alleged that could show that Deputy Lau had an ulterior motive, such as personal gain. The undersigned will recommend dismissal of the "abuse of process" aspects of this claim as asserted against Defendants Holland and Lau. The undersigned will also recommend that such claim be dismissed against defendant Ohio Casualty Insurance Company inasmuch as its liability is derivative of

Defendant Holland's official capacity liability, and any liability that Ohio Casualty Insurance Company may have on this claim should be dismissed as well. N.C.Gen.Stat. § 58-76-5.

**F.** **Motion to Dismiss the Bailment Claim in the Seventh Claim for Relief**

In their Seventh Claim for Relief, which is asserted against defendant Macon County and Defendants Holland and Lau, plaintiffs contend that these defendants owed, under a theory of bailment, a duty of care to plaintiffs to maintain the safety and security of items seized pursuant to the search warrants. Defendants have moved to dismiss this claim in its entirety arguing that North Carolina law is well settled and does not impose duties under bailment for items seized pursuant to a search warrant. North Carolina law provides, as follows:

> "A bailment is created when a third person accepts the sole custody of some property given from another." *Bramlett v. Overnite Transport*, 102 N.C.App. 77, 82, 401 S.E.2d 410, 413 (1991). "The bailor has the burden of establishing the existence of a bailor-bailee relationship." *Fabrics, Inc. v. Delivery Service*, 39 N.C.App. 443, 447, 250 S.E.2d 723, 725 (1979). When a bailment is created for the benefit of both the bailor and bailee, the bailee is required to exercise ordinary care to protect the subject of the bailment from negligent loss, damage, or destruction. *Strang v. Hollowell*, 97 N.C.App. 316, 387 S.E.2d 664 (1990); *Ward v. Newell*, 68 N.C.App. 646, 315 S.E.2d 721 (1984).
>
>> A prima facie case of actionable negligence ... is made when the bailor offers evidence tending to show or it is admitted that the property was delivered to the bailee; that the bailee accepted it and thereafter had possession and control of it; and that the bailee failed to return the property

> or returned it in a damaged condition.
> *McKissick v. Jewelers, Inc.*, 41 N.C.App. 152, 155, 254 S.E.2d 211, 213 (1979).

Barnes v. Erie Ins. Exchange, 156 N.C.App. 270, 273-274 (2003). Fundamentally, a bailment cannot occur where items are seized pursuant to a search warrant inasmuch as the possessor of the seized items does not "give" the items to law enforcement, rather, they are taken. North Carolina recognizes three types of bailments: (1) bailments for the sole benefit of the bailor; (2) bailments for the sole benefit of the bailee; and (3) bailments for the benefits of both parties. Bramlett v. Overnite Transport, 102 N.C.App. 77, 82 (1991). A seizure pursuant to a search warrant does not create any cognizable bailment. More to the point, however, is the decision of the North Carolina Court of Appeals, which held that

> [t]he Industrial Commission failed to cite, and our own research does not reveal, any basis in the law of this State for the proposition that a lawful seizure, pursuant to the government's police powers, creates a bailment of the property which is seized. We decline to extend the duty of care created by a bailment to lawful seizures. The seizure of property is a unilateral act which does not suggest the mutual intent necessary to form even an implied bailment contract.

Becker v. N.C. Dept. of Motor Vehicles, 177 N.C.App. 436, 439-40 (2006). The undesigned will recommend that the Seventh Claim for Relief be dismissed in its entirety as to all defendants.

### G.    Motion to Dismiss Eight Cause of Action

Finally, the county defendants have moved to dismiss the eighth cause of action, which is for punitive damages. North Carolina does not recognize a "cause of action" for punitive damages. Instead, punitive damages may be sought in an *ad damnum* clause or in a prayer for relief for damages for some other tort that would support punitive damages.

As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wanton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted). Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215- 16 (2001) (citation omitted).  In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a).

Finding that plaintiffs cannot assert punitive damages as an independent cause of action, the undersigned will recommend that the Eighth Claim for Relief be dismissed as non-justiciable.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that the county defendants' Partial Motion to Dismiss (#9) be **ALLOWED** in its entirety as above provided.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file

objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: July 9, 2010

Dennis L. Howell
United States Magistrate Judge