# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL CASE NO. 2:10-cv-00009-MR-DLH

| | |
|---|---|
| JOHN WILLIAM BISHOP and <br> DONNA J. BISHOP,[1] <br>            Plaintiffs, <br> Vs. <br> COUNTY OF MACON; MACON COUNTY SHERIFF'S DEPARTMENT, ROBERT L. HOLLAND, individually and in his Official Capacity as Sheriff of Macon County; C. J. LAU, individually and in his Official Capacity as Deputy Sheriff of Macon County; GARY GARNER; W. T. POTTS, and THE OHIO CASUALTY INSURANCE COMPANY, <br>            Defendants. | MEMORANDUM OF DECISION <br> and <br> ORDER OF DISMISSAL |

**THIS MATTER** is before the Court on the Plaintiff's Response to Court's Post-Appeal Order (#60) and the Defendants' Reply to Plaintiff's Response to Court's Order (#61).

This action concerns the seizure and disposition of property by state authorities in connection with a search warrant, which issued in connection with a string of burglaries or larcenies of rental properties in Macon County, North Carolina. Plaintiffs brough actions under 42 U.S.C. § 1983 and supplemental state law claims. Earlier, this court held that John and Donna Bishop's federal claims were Heck barred. The Court of Appeals for the Fourth Circuit upheld the dismissal as to Mr. Bishop, finding that it was his possession of the stolen goods that

---

      1    Consistent with the previous Order of the court, plaintiffs' designation of this action as a "relator" lawsuit has been sricken. See Order (#49) at 1.

constituted the evidence of his guilt, Ballenger v. Owens, 352 F.3d 842, 846-47 (4th Cir. 2003), but reversed as to Ms. Bishop, finding that Heck was inapplicable since she had never been taken into custody and was, therefore, unable to obtain a favorable resolution of the charges against here by filing a habeas petition. Wilson v. Johnson, 535 F.3d 262 (4th Cir. 2008).

## I.

Plaintiffs filed their Amended Complaint on April 5, 2010, alleging the following claims: (1) as to Defendants Robert L. Holland (Holland) and C.J. Lau (Lau), both individually and in their official capacities, violations pursuant to 42 U.S.C. § 1983 of the right to be free from unreasonable searches and seizures; (2) as to Defendants Macon County and Macon County Sheriff's Department (Sheriff's Department), violations pursuant to 42 U.S.C. § 1983 for enacting and maintaining policies and customs which violated the Plaintiffs' constitutional rights; (3) a state law claim for negligence against all Defendants; (4) a state law claim for false arrest against Holland and Lau; (5) a state law claim for malicious prosecution and abuse of process against Defendants Gary Garner (Garner), Holland and Lau; (6) a state law claim for conversion against Lau and Defendant W.T. Potts (Potts); (7) a state law claim for bailment against Macon County, Holland and Lau; and (8) a purported "substantive claim" for punitive damages against the Sheriff's Department, Holland, Lau, Garner and Potts. Amended Complaint (#3).[2]

---

2   From the face of the pleadings the court will dismiss the "cause of action" for punitive damages. North Carolina does not recognize a "cause of action" for punitive damages. Instead, punitive damages are a remedy and may be sought in an *ad damnum* clause or a prayer for relief in conjunction with some tort, proof of which would support a request for punitive damages.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, *Damages and Recovery* § 195 at 389 (1972). North Carolina follows this general rule of law.

Defendants Macon County, Sheriff's Department, Holland, Lau, and the Ohio Casualty Insurance Company (the County Defendants) filed a partial motion to dismiss certain claims for failure to state claims upon which relief may be granted.[3] Motion to Dismiss (#9). Defendant Potts filed an answer which included a motion to dismiss but did not separately so move. Answer (#8). Defendant Garner moved to dismiss the malicious prosecution and abuse of process claims for failure to state claims. Motion to Dismiss (#23).

On July 9, 2010, the Magistrate Judge issued a Memorandum and Recommendation addressing the County Defendants' Partial Motion to Dismiss.[4] M& R (#18). The Plaintiffs filed Objections to the recommendation that the partial motion be granted. Objections (#22). On September 1, 2010, prior to review by the District Court, the Magistrate Judge withdrew the Memorandum and Recommendation on the basis of Heck v. Humphrey, 512 U.S. 477, 486, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Withdrawal of M&R (#36) The Magistrate provided the parties with an opportunity to address the impact of Heck. Id.. The County Defendants argued for the dismissal of all federal claims based on Heck, but did not address whether supplemental jurisdiction over the state law claims should be exercised. County Response (#40) Defendant Garner also agreed that all federal claims should be dismissed based on Heck but requested that the Court exercise supplemental jurisdiction over the state law claims against him. Garner

---

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina, punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).
Finding that plaintiffs cannot assert punitive damages as an independent cause of action, the undersigned will recommend that such claim be dismissed as non-justiciable.

[3] These Defendants concede that they did not move to dismiss certain state law claims, as will be discussed *infra*. Reply (#61).

[4] Defendant Garner filed his Motion to Dismiss after the Magistrate Judge entered the Memorandum and Recommendation. It therefore was not considered within that Recommendation.

Response (#39). The Plaintiffs argued that Heck did not apply. Plaintiffs' Response (#41).

The Magistrate Judge thereafter entered a Revised Memorandum and Recommendation in which he recommended dismissal of all federal claims on the basis of Heck and recommended that the District Court decline to exercise supplemental jurisdiction over the state law claims which, he recommended, should be dismissed without prejudice. Revised M&R (#45). The Magistrate Judge also included alternative recommendations for the dismissal of certain claims on the merits in the event that the District Court did not agree that Heck applied. Id. The Plaintiffs again filed Objections to the Magistrate Judge's recommendations, and this court overruled those objection.5

II.

On appeal, the United States Court of Appeals for the Fourth Circuit affirmed in part and vacated in part and remanded for further proceedings. Bishop v. County of Macon, 484 F. App'x 753 (4th Cir. 2012). In so holding, the Fourth Circuit concluded that Heck barred the § 1983 claims of Mr. Bishop and thus affirmed the dismissal of his claims. The Court went on to conclude, however, that Heck did not bar the § 1983 claims of Ms. Bishop for the reasons previously mentioned and therefore vacated the dismissal of her claims and remanded for further proceedings. Id.

III.

On remand, the Magistrate Judge notified the parties that, based on the ruling of the Fourth Circuit, the only federal claims which remained in the case were Ms. Bishop's § 1983 claims for wrongful seizure of property, arrest, and prosecution. Order (#57) at 2. The Magistrate Judge noted that a question remained as to whether Ms. Bishop's state law claims remained viable. Id. He further noted that Mr. Bishop's state law claims had previously been

---

5 At the time, this case was assigned to Honorable Martin Reidinger, United States District Judge.

dismissed because this Court declined to exercise supplemental jurisdiction. Id. The Magistrate Judge provided the Plaintiffs with an opportunity to further object to the Revised Memorandum and Recommendation and to advise whether Ms. Bishop's state law claims remain viable. Id. The Defendants were likewise provided an opportunity to file a reply. Id. The parties complied with these instructions. Response (#60); Reply (#61).

To the extent those responses are considered Objections, the court has considered those in the manner provided under 28, United States Code, Section 636(b)(1)(c). In conducting that review, the Court has given careful consideration to all alternative grounds for dismissal recommended by the Magistrate Judge in the Revised Memorandum and Recommendation. The Court will also consider the Motion to Dismiss of Defendant Garner which was previously denied as moot.

IV.

As to objections, a district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987), overruled on other grounds by Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997) (boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*."

United States v. Midgette, 478 F.3d 616, 621 (4th Cir.), cert. denied, 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original).

As to the County's and Garner's motion to dismiss for failure to state a claim on which relief may be granted, in order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570).

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Id. (quoting Twombly, 550 U.S. at 555, 557 and Iqbal, 129 S.Ct. at 1950).

In addition to the arguments and pleadings, the court has considered exhibits outside the

6

pleadings. In response to the Magistrate Judge's request for supplemental briefing on the basis of Heck, the County Defendants submitted exhibits which were referenced in the Amended Complaint. Response to Order (#40). The Plaintiffs did not object to the supplemental filings; rather, they *cited them* in support of their Objections to the Revised Memorandum and Recommendation. Plaintiff's Objection (#46). The Court has considered those exhibits which constitute unopposed evidence specifically referred to in the Amended Complaint. Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 195 n.5 (4th Cir. 2002); Stewart v. Pension Trust of Bethlehem Steel Corp., 12 F. App'x 174, 176 (4th Cir. 2001) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). For the same reasons, the Court has considered a supplemental filing by Plaintiffs, which they attached to their Objections. Plaintiffs' Objections (#46-1).

V.

With that introduction to the procedural history over the last four years, the Court will now turn to the substantive allegations of Plaintiffs' Amended Complaint. In September 2006, Mr. Bishop moved in with his friend, Defendant Garner, who at the time was living in Macon County. Amended Complaint (#3) at 2-3. During that time, Mr. Bishop worked for Defendant Potts, also a resident of Macon County, who ran a real estate management company. Id. Between late 2006 and early 2007, multiple larcenies were reported by the owners of vacation

7

homes managed by Potts. Id. at 3.

On March 1, 2007, Mr. Bishop moved out of Garner's home and went to live with his mother, Ms. Bishop. Id. On March 4, 2007, Garner filed a complaint with the Sheriff's Department in which he accused Mr. Bishop of stealing cash from him while they lived together. Id. During an interview with investigating officers, Garner told the officers that Mr. Bishop was in possession of stolen goods. Id.

Deputy Sheriff Lau executed three search warrants at Donna Bishop's residence.[6] Id. The Amended Complaint contains an allegation that personal property was seized during these searches which was not identified in the applications for search warrants; however, the items that were are not described in the Amended Complaint. Id. A review of the search warrants referenced in the Amended Complaint shows that the property which was seized was, in fact, listed in the warrants.[7] See Exhibits (#40-3), (#40-4), and (#40-6). The items which were seized during the searches included two flat screen televisions, a remote control, a surround-sound-system, a router, and eight oriental rugs of varying sizes. Id. It is also alleged that Lau told Ms. Bishop she could recover the property if she produced proof of ownership. Id.

Plaintiffs further alleged in the Amended Complaint that instead of preserving the "evidence" seized during the searches, Lau "distributed most of the seized property" to Potts. Id. It is further alleged that Potts then "distributed a few items to purported victims of the larcenies" and allegedly kept or disposed of the remainder. Id. at 4. Lau was also accused of failing to investigate leads which "could" have exonerated Mr. Bishop and which "could" have implicated other people, including Garner and Potts. Id.

---

[6] The Amended Complaint does not allege the dates of execution.

[7] The contradiction between the allegation in the Amended Complaint and the document referred to therein may be noticed because the Plaintiffs have not objected to the Defendants' filing of the documents and, indeed, have referenced them in their Objections as mentioned above.

It is further alleged that Lau failed to advise the prosecutor for Macon County that the evidence had not been preserved, thus causing Ms. Bishop's arrest on charges of possession of stolen property. Id. Criminal charges against Ms. Bishop were dismissed on November 4, 2008 for "insufficient evidence, in return for guilty pleas by Mr. Bishop, entered, in part, to protect his mother." Id. Ms. Bishop submitted a copy of the transcript of Mr. Bishop's guilty plea in connection with her Objections. Plt. Ex. (#46-1). Mr. Bishop entered an Alford[8] plea to two of the eight indictments against him. Id. Mr. Bishop pled guilty to two charges of breaking and entering on the dates which had been referenced in the applications for the search warrants. See (#40-12), (#40-3), (#40-4), and (#40-6). On the same date that the Judgment of Conviction was entered, the remaining charges were dismissed because Mr. Bishop had "agreed to plead guilty to [two of] the [breaking and entering] charges in exchange for a dismissal of ... all other charges." (#40-13). A review of the indictments shows that Mr. Bishop pled guilty to charges involving the theft of paintings, televisions, and electronics in exchange for the dismissal of the charges related to the oriental rugs. (#40-10).

VI.

A.

The Court has first considered the viability of Ms. Bishop's Section 1983 claims, which are founded on the validity of search warrants and lawfulness of the searches. Ms. Bishop has conceded that she has "never asserted the invalidity of the search warrants or the lawfulness of the searches." See (#46) at 3 & (#49) at 17, n.5. Based on her concession, the Court finds that she has failed to state any claims for relief pursuant to § 1983 based on the obtaining of the search warrants and the execution thereof. This claim will be dismissed.

---

[8] *North Caroina v. Alford*, 400 U.S. 25 (1970).

B.

In the Magistrate Judge's notice to the parties of their right to file supplemental objections, he correctly stated that the Fourth Circuit's decision did not vacate this Court's determination that any claims based on the handling of the evidence and/or failure to pursue other leads during the investigation were abandoned. While given the opportunity to address this determination anew, Ms. Bishop has interposed no objections within the time allowed and the Court reaffirms its earlier determination that Ms. Bishop's Section 1983 claims based on handling of the seized evidence and failure to investigate or pursue other leads have been abandoned. The Court will dismiss those aspects of Ms. Bishop's Section 1983 claim accordingly.

C.

Next, the Court has considered Ms. Bishop's Section 1983 claim against Holland and Lau in the First Claim for Relief. In the First Claim for Relief of the Amended Complaint, Ms. Bishop sued Holland and Lau in both their official and individual capacities for violating her right to be free from unreasonable searches and seizures. Holland and Lau are alleged to have acted without probable cause to seize her personal property and without "proper cause" to arrest Ms. Bishop for possession of stolen property. Amended Complaint (#3) at 4.

As noted above, however, Ms. Bishop has conceded the validity of the search warrants and the lawfulness of the searches, making her claims against these defendants patently implausible. "When a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that probable cause existed to support the application."[9] Anderson v. Caldwell County Sheriff's Office, No. 11-2344, 2013 WL 1749513,

---

[9] The Court notes that the defense of qualified immunity was not raised by the Defendants in the motion to

10

at *5 (4th Cir. Apr. 24, 2013). With her concession that the search warrants and their execution were lawful, the seizure of property found during that execution was also lawful.

As to her claim for wrongful seizure of her person, that claim too is implausible as Ms. Bishop's arrest for possession of stolen property was lawful as it was based on discovery of stolen property in her home, property which she has conceded was lawfully seized pursuant to a lawful search warrant. Indeed, probable cause was later found by the indictment of the grand jury. Id. It appearing that Ms. Bishop cannot plausibly allege violation of any constitutional right, no further analysis is required and qualified immunity applies. Id. (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).[10] Ms. Bishop has no viable §1983 claim against Holland or Lau in their individual capacities and such claim will be dismissed.[11]

D.

In her Objections, Ms. Bishop claims damages "for the wrongful seizure and disposal of [her] own personal property unrelated to allegations of criminal misconduct." Objections (#46) at 3. That property, she argues, was not evidence of a crime. Id. The Amended Complaint, however, does not contain such an allegation. Amended Complaint (#3). Instead, she alleges in the Amended Complaint that the property was not described in the search warrants and therefore was illegally seized. Id. at 3. As previously noted, however, the property which was seized was,

---

dismiss. Donna Bishop's concession, however, allows this Court to raise the issue *sua sponte*. See Smith v. Gilchrist, No. 3:10-cv-636-RJC-DLH, 2012 WL 5985487, at *1 n.1 (W.D.N.C. Nov. 28, 2012) (citing Noel v. Artson, 297 F. App'x 216, 218 (4th Cir. 2008) (noting that nothing would bar defendant from arguing the defense for the first time at trial)). Here, the Defendants had not yet answered the Amended Complaint and thus could have raised qualified immunity as an affirmative defense therein. Id.

[10] In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court overruled the mandatory two-step sequence adopted in Saucier.

[11] The Defendants did move to dismiss the claim against Holland in his individual capacity. The Court notes that, in addition to Donna's concessions, there were no allegations in the Amended Complaint alleging any personal involvement or conduct by Holland. See Garraghty v. Com. of Va. Dept. of Corrections, 52 F.3d 1274, 1280 (4th Cir. 1995). Even if Donna attempted to claim supervisory liability, the complaint contains no such allegations. Randall v. Prince George's County, Md., 302 F.3d 188, 207 (4th Cir. 2002).

in fact, listed in the warrants, making her Objection based on a fact that is not just implausible, but factually impossible. See (#40-4) & (#40-6). Thus, the Objection is overruled.

E.

Ms. Bishop also asserts official capacity claims against Holland and Lau. These official capacity claims are, in essence, claims against the County. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997). "[A] plaintiff seeking to impose liability on a [local governing body such as a county] under §1983 [must] identify a [government] "policy" or "custom" that caused the plaintiff's injury." Id. "[I]t is not enough for a § 1983 plaintiff merely to identify *conduct* properly attributable to the" government. Id. at 404 (emphasis provided). Instead, a plaintiff must identify a policy or custom which the governing body through deliberate conduct caused the injury. Id.; Cortez v. Prince George's County, Maryland, 31 F. App'x 123, 128-29 (4th Cir. 2002) (holding that liability on the part of the county for the allegedly unconstitutional conduct of a law enforcement officer arises only if his conduct represented or carried out the official county custom or policy).

Here, the Amended Complaint contains no allegation that the policies and/or customs of the Sheriff's Department caused the injuries inflicted on Ms. Bishop as alleged in the First Claim for Relief. Acknowledging as much, Ms. Bishop claims that the Court should look not just to the allegations in the First Claim for Relief, but also to those in the Second Claim for Relief.

The Second Claim for Relief is limited to the County and the Sheriff's Department; no claim is there asserted against Holland and Lau, and the First Claim does not incorporate the allgeations of the Second. The alleged customs and policies identified in the Second Claim for Relief are a failure to supervise and train, the improper investigation of complaints of police misconduct, and the use of police powers to coerce convictions of innocent individuals.

Amended Complaint (#3) at 5. None of these allegations relate to the alleged conduct of Holland and Lau in the First Claim for Relief.[12] Harper v. City of New York, 424 F. App'x 36, 39 (2$^d$ Cir. 2011) (granting Rule 12(b)(6) motion where plaintiff did not provide even an indication of the custom or policy to which he was subjected). The mere invocation of words "is insufficient to cure facts that fail to establish a policy undertaken by [the governing body] in violation of a plaintiff's constitutional rights." Id. Thus, the claim asserted in the First Claim for Relief against Holland and Lau in their official capacities must also be dismissed.

F.

In this subpart of her Second Claim for Relief, Ms. Bishop alleges that Macon County and the Sheriff's Department developed and maintained customs and policies which exhibited deliberate indifference to the constitutional rights of individuals located therein. The Defendants moved to dismiss the County on the grounds that a county may not be held liable for purported constitutional violations by a county sheriff and/or his or her deputies. Ms. Bishop failed to make any argument against this position, limiting her response to the motion to dismiss the Sheriff's Department as to such claim. Response (#16) at 5. In subsequent filings, she stated that she "stand[s] by" her previous arguments. See Objection (#46) at 9; Response (#60) at 6.

Having reviewed the applicable law, the Court finds the County's position to be correct. A "county may only be held liable for acts for which the county has final policymaking authority." Parker v. Bladen County, 583 F.Supp.2d 736, 739 (E.D.N.C. 2008); Jones v. Harrison, No. 4:12-CV-90-D, 2013 WL 1452861, at *2 (E.D.N.C. Apr. 9, 2013) (concluding that county may not be held liable under § 1983 for actions of sheriff or his or her department concerning custom, policy, training or supervision of that department); Wiley v. Buncombe

---

[12] Moreover, to the extent that it could be argued that the Amended Complaint alleged that Lau and/or Holland used police powers to coerce Ms. Bishop's conviction, she has conceded that the search and seizure were lawful and by so doing conceded that there was probable cause for her arrest.

13

County, 846 F.Supp.2d 480, 486 (W.D.N.C.), aff'd, 474 F. App'x 285 (4th Cir. 2012). Accordingly, the Court will dismiss this claim against Macon County.

The Defendants also moved to dismiss the Sheriff's Department as to such subpart arguing that in North Carolina a sheriff's department is not a legal entity capable of being sued. In response, Ms. Bishop argued only that a sheriff's department is not a component part of any county or municipality. Response (#16) at 5 ("Therefore, the essential question is whether the Sheriff of Macon County and the Macon County Sheriff's Department constitute one and the same entity and are separately subject to suit."). The question, however, is not answered or even addressed in the responsive brief and all of Ms. Bishop's later filings merely reiterate her earlier position. See Objections (#46) at 9; Response (#60) at 6. Indeed, Ms. Bishop took no position on the issue of whether a sheriff's department in North Carolina may be sued in federal court.

"State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F.Supp.2d 413, 419-20 (M.D.N.C. 2004). There is no statutory authority in North Carolina authorizing suit against a North Carolina county's "sheriff's department." Parker, 583 F.Supp.2d at 740. Therefore, the Macon County Sheriff's Department lacks the legal capacity to be sued and must be dismissed from this action. Id.

### G.

As an alternative ruling, the Court notes that the claims against Holland and Lau have been dismissed. "No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee." Anderson, 2013 WL 1749513 at *7. "Because no Fourth Amendment violation occurred, the sheriff . . . and [the Sheriff's Department] may not be held liable for failure to train or supervise the [Sheriff's Department] deputies." Id. The same reasoning applies to any claim based unconstitutional customs and

policies. Id.

H.

The County Defendants moved to dismiss the Third Claim for Relief based on negligence and the Seventh Claim for Relief based on bailment as barred by public official immunity. Motions to Dismiss (#9 and #10). These state law claims were brought against Holland and Lau in their individual capacities. "Under North Carolina law, plaintiffs may hold public officials who are engaged in the exercise of discretionary, governmental duties personally liable only for "corrupt or malicious" actions." Anderson, 2013 WL 1749513, at *7. The Fourth Circuit in Anderson noted that the North Carolina Court of Appeals "recently held that if probable cause existed for the issuance of an arrest warrant, public officer's immunity shields the defendants from individual liability." Id. at *8 (citing Beeson v. Palombo, 727 S.E.2d 343, 346 (N.C. Ct. App.), disc. rev. denied, 366 N.C. 389, 732 S.E.2d 352 (2012)).

Again, Ms. Bishop's concession that there was probable cause for the search warrant bars her claims. It is undisputed that it was the execution of the search warrant that led to the discovery of the stolen property in Ms. Bishop's home and that Ms. Bishop was then arrested based on that discovery. Thus, her arrest was based on probable cause, not negligence as a matter of well settled state law.[13] Id.; Patterson v. City of Gastonia, 725 S.E.2d 82, 93 (N.C. Ct. App. 2012) (public official immunity provides that an officer may not be held personally liable for mere negligence). The same reasoning applies to the Seventh Claim for Relief for Bailment. Since the property which was removed was listed in the application for the search warrant, a warrant that is concededly valid, no claim for bailment may survive public official immunity.

---

[13] While Donna Bishop's arrest warrant is not before the Court, the indictment of the grand jury, which was based on a finding of probable cause, is contained in the record. Defs. Response, Ex. 10 (#40-11).

"As substantively plaintiff only challenges the existence of probable cause for the seeking and issuance of the arrest warrants, and as the arrest warrants were properly sought and issued based upon probable cause, and as plaintiff has not demonstrated any deliberate falsehood or … reckless disregard by defendants in seeking the … warrants, defendants are shield by immunity." Beeson, 727 S.E.2d at 351. The Court finds that public official immunity stands in bar to the claims against Holland and Lau based on negligence and bailment in their individual capacities. The same reasoning bars any such claim by Mr. Bishop against Holland and Lau in their individual capacities.

I.

Garner moved to dismiss Ms. Bishop's claim against him for malicious prosecution and abuse of process because the Amended Complaint does not contain any allegation of wrongdoing by him against her specifically. Garner's Mem. In Support (#24). In the Amended Complaint, it is alleged that Garner made a report to law enforcement that Mr. Bishop had stolen cash while living with Garner and that on another occasion Garner had stated his belief that Mr. Bishop was in possession of stolen property. Amended Complatinty (#3) at 3  These accusations did not involve Ms. Bishop and were not directed at her. Evans v. Chalmers, 703 F.3d 636, 657 (4th Cir. 2012) (noting that elements of North Carolina malicious prosecution claim are causation of criminal proceeding against victim, without probable cause and with malice). The fact that Mr. Bishop left Garner's home to move in with Ms. Bishop, his mother, does not conflate into an accusation by Garner against Ms. Bishop. "It cannot be said that one who reports suspicious circumstances to the authorities thereby makes himself responsible for their subsequent action … even when … the suspected persons are able to establish their innocence." Becker v. Pierce, 168 N.C.App. 671, 828, 608 S.E.2d 825 (2005) (internal quotation marks and citation omitted).

The Amended Complaint also fails to state a claim for abuse of process which is the misuse of legal process for an ulterior purpose. Erthal v. May, 736 S.E.2d 514, 523 (N.C. Ct. App. 2012), appeal dismissed, disc. rev. denied, 736 S.E.2d 761 (N.C. 2013). Abuse of process consists of malicious misuse after process has issued; that is, after a proceeding has been initiated, the defendant must have committed some additional act. Id. No such allegation has been made in the Amended Complaint. Amended Complaunt (#3) at 7. The Court also notes that in her Response to Garner's motion, Ms. Bishop made no argument against the dismissal of her claim against Garner for abuse of process. Response (#34) at 4-5.

As an alternative ruling, the Court would deny Garner's motion as moot and decline to exercise supplemental jurisdiction over these state law claims.

J.

With all the federal claims now dismissed, the Court has considered whether to exercise its supplemental jurisdiction over the remaining state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all claims over which it has jurisdiction. 28 U.S.C. § 1367(c)(3). In the supplemental objections, Ms. Bishop conceded that this Court has the discretion to decline to exercise supplemental jurisdiction over such state law claims. Response (#60) at 5. The Court so declines "[i]n the interest of avoiding needless decisions of state law[.]" Hunt v. Branch Banking & Trust Co., 480 F. App'x 730, 732 (4th Cir. 2012) (internal quotation and citation omitted). Thus, when federal claims are dismissed before trial, the state claims should likewise be dismissed. Id.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Objections to the Revised Memorandum and Recommendation are **OVERRULED**, the Revised Memorandum and Recommendation after

remand as explained by the magistrate Judge is otherwise **AFFIRMED**, and the Partial Motion to Dismiss by Defendants Macon County, Macon County Sheriff's Department, Robert L. Holland, Charles J. Lau, and the Ohio Casualty Insurance Company (#9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The First and Second Claims for Relief asserted by Donna Bishop in the Amended Complaint are hereby **DISMISSED** with prejudice;

2. The Third Claim For Relief asserted by John Bishop and Donna Bishop based on negligence are hereby **DISMISSED** with prejudice as to Holland and Lau in their individual capacities;

3. The Seventh Claim for Relief asserted by John Bishop and Donna Bishop based on bailment are hereby **DISMISSED** with prejudice as to Holland and Lau in their individual capacities; and

4. The Court declines to exercise supplemental jurisdiction as to all remaining state law claims asserted against the County Defendants and Defendant Potts and these claims are hereby **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Defendant Gary Garner (#23) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The claims asserted against Garner by Donna Bishop are hereby **DISMISSED** with prejudice.

2. The claims asserted against Garner by John Bishop, having previously been dismissed without prejudice, this portion of the motion is denied as moot.

The Clerk of Court is instructed to enter a Judgment reflecting such determination and terminating this action.

Signed: September 29, 2014

Max O. Cogburn Jr.
United States District Judge